IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| DOROTHY JACKSON, individually ) <br> and on behalf of all persons similarly ) <br> situated, ) <br> ) <br>     Plaintiffs, ) <br> v. ) <br> ) <br> THE MONEY TREE, INC., SMALL ) <br> LOANS, INC., THE MONEY TREE ) <br> OF GEORGIA, INC., and THE ) <br> MONEY TREE OF FLORIDA, INC., ) <br> ) <br>     Defendants. ) | CIVIL ACTION NO.: 1-10-cv-107 (WLS) <br><br> CLASS ACTION <br><br> JURY DEMANDED |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff Dorothy Jackson ("Plaintiff"), individually and on behalf of all others similarly situated, and submits the following Class Action Complaint against Defendants THE MONEY TREE, INC. ("The Money Tree"), SMALL LOANS, INC. ("Small Loans"), THE MONEY TREE OF GEORGIA, INC. ("The Money Tree Georgia") and THE MONEY TREE OF FLORIDA, INC. ("The Money Tree Florida"), (collectively, "Defendants" or "The Money Tree Defendants"), and states as follows:

### I. PRELIMINARY STATEMENT

1.      This is a class action brought on behalf of the named Plaintiff and all persons in the United States who obtained loans from The Money Tree Defendants, and, in connection therewith, paid a premium for collateral protection plans to last a certain time

1

period, mainly the full term of the loans, but who did not receive such collateral protection insurance.

2.    In this action, the Plaintiff and Class members allege that Defendants systematically and intentionally charged and continue to charge customers for collateral protection plans to last a certain time period, mainly the full term of the loans, but secured collateral protection plans for a shorter period.

3.    Defendants' misconduct allowed them to collect premiums for the stated period without having to pay for, or provide, such plans.

4.    In this lawsuit, Plaintiff seeks compensation for Plaintiff and the Class members for the monies that Defendants have improperly obtained and/or to obtain the amount by which Defendants were unjustly enriched by their improper practices.

5.    Plaintiff and Class members allege the facts herein upon information and belief except as to allegations specifically pertaining to Plaintiff, which allegations are based upon personal knowledge, and except as to allegations based upon documents which are predicated upon Plaintiff's counsel's investigation of Defendants.

## II. PARTIES

6.    Plaintiff is a resident of Eufaula, Alabama.  Plaintiff obtained a loan from Defendants in the amount of $2,687.79 with a term of eighteen (18) months.  In connection with that loan, Plaintiff paid $470 for a collateral protection plan that was to last "the term of the loan," 18 months.  Although Plaintiff paid for a collateral protection

plan for the full term of the loan, Defendants only provided Plaintiff with a collateral protection plan for twelve (12) months. As a result, Defendants failed to provide the collateral protection plan under the terms of the agreement. Plaintiff brings this action on her own behalf and as a representative of a class of persons similarly situated.

7. The Money Tree Defendants – The Money Tree, Small Loans, The Money Tree Georgia and The Money Tree Florida – are corporations organized under the laws of the State of Georgia and all share a principal place of business at 114 South Broad Street, Bainbridge, Georgia 39817.

8. The registered agent for all Defendants is B. Thomas Conger, 218 E. Water Street, Bainbridge, Georgia 39817.

9. Defendant The Money Tree operates loan offices in Georgia, Alabama, Louisiana and Florida. The Money Tree's website states that "The Money Tree Inc. was founded in 1987 and operates consumer finance offices in 103 branch locations throughout various cities and towns in Georgia, Alabama, Louisiana, and Florida." *See* http://www.themoneytreeinc.com, last visited August 6, 2010.

10. The Money Tree provides money for loans made to borrowers in Georgia, Alabama, Louisiana, and Florida, services those loans, and deals and corresponds directly with borrowers, including Plaintiff.

11. The Money Tree operates and extends loans in Georgia, Alabama, Louisiana, and Florida that through its agents, employees, joint venturers and alter ego entities, including

but not limited to: Small Loans, The Money Tree of Georgia and The Money Tree of Florida.

12.     The Money Tree holds itself out to the public as a single operating entity with Small Loans, The Money Tree of Georgia and The Money Tree of Florida.

13.     Small Loans, The Money Tree of Georgia and The Money Tree of Florida are so organized and controlled and their businesses conducted in such a manner as to make them mere agencies, instrumentalities, adjuncts, or alter egos of The Money Tree.

14.     All Defendants share officers and directors, including, but not limited to, Jennifer L. Ard, Steven P. Morrison and Bradley D. Bellville, who are all located at 14 South Broad Street, Bainbridge, Georgia.

15.     Upon information and belief, there are insufficient assets held by the Defendants other than The Money Tree to satisfy the claims asserted herein.

### III.     JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), codified in pertinent part at 28 U.S.C. §1332(d), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of

individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2), (5). Plaintiff is a citizen of Alabama, whereas, as set forth above, Defendants are citizens of Georgia. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. §1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Georgia, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B).

17.     Defendants are subject to personal jurisdiction in this District in that they reside in this District, Defendants have previously consented thereto and because they have employed agents or representatives or has otherwise employed persons in this District, and in that the Defendants:

>   (a) have transacted business in this district;
>
>   (b) have contracted to supply services in this district;
>
>   (c) have caused injury or damage in this district by acts or omissions outside this district while regularly doing and soliciting business in this district; and
>
>   (d) otherwise has had minimum contacts with this district and, under the circumstances, it is fair and reasonable to require the Defendants to come into this district to defend this action.

18. Venue is proper in this district in that Defendants previously consented thereto and because, pursuant to 28 U.S.C. § 1391:

> (a) The acts or omissions giving rise to the claims occurred in this district; and
>
> (b) Defendants regularly conduct business in this district and are therefore deemed to reside in this district pursuant to 28 U.S.C. §1391(c) because they are subject to personal jurisdiction in this district in that the Defendants:
>
>> (i) have transacted business in this district;
>>
>> (ii) have contracted to supply services in this district;
>>
>> (iii) have caused injury or damage in this district by acts or omissions outside this district while regularly doing and soliciting business in this district; and
>>
>> (iv) otherwise have had minimum contacts with this district and, under the circumstances, it is fair and reasonable to require the Defendants to come into this district to defend this action.

### IV. FACTUAL ALLEGATIONS

19. The Money Tree – through its alter egos, agents, employees and/or joint venturers, including but not limited to Small Loans, The Money Tree Georgia and The Money Tree

Florida – offers small loans to persons out of its 103 branch offices in Georgia, Alabama, Florida and Louisiana.

20. Thousands of customers have obtained loans from The Money Tree.

21. Most, if not all, of those customers paid premiums for collateral protection plans that were to be obtained by The Money Tree.

22. The collateral protection plans offered, and that were to be obtained, by The Money Tree were to last the full term of the loans. A standard agreement used by The Money Tree provides that:

> CREDIT LIFE INSURANCE, CREDIT DISABILITY (A&H) INSURANCE ARE NOT REQUIRED. CREDIT DUAL PROPERTY INSURANCE AND/OR COLLATERAL PROTECTION PLAN (CPP) INSURANCE MAY BE REQUIRED. THE LENDER, UNDER CERTAIN CIRCUMSTANCES, MAY WAIVE SUCH REQUIREMENT. YOU MAY OBTAIN THIS INSURANCE FROM ANYONE YOU WANT, PROVIDED THE INSURANCE COMPANY IS ACCEPTABLE TO THE LENDER. IF YOU GET THE INSURANCE FROM THE LENDER, IT WILL BE **FOR THE TERM OF THE LOAN** AND YOU WILL PAY: … $_____ CPP INSURANCE.

23. On or about August 8, 2007, Plaintiff obtained a loan of $2,687.79 from a Small Loans branch of The Money Tree.

24. As part of the collateral for the loan, Plaintiff pledged a 1997 Nissan Altima.

25. Plaintiff paid a premium of $470.00 to The Money Tree for a collateral protection plan to cover her 1997 Nissan Altima, and such plan was to "BE FOR THE TERM OF THE LOAN."

26. Plaintiff made payments on the loan and otherwise fulfilled her contractual obligations.

27. In September 2008, Plaintiff's vehicle was involved in a motor vehicle collision and was declared "totaled."

28. The collateral protection plan that The Money Tree obtained for Plaintiff was only for 12 months instead of the full 18-month term of Plaintiff's loan. As a result, the claim under Plaintiff's collateral protection plan was denied on the basis that the motor vehicle accident occurred outside of the 12-month policy term of the collateral protection plan obtained by The Money Tree for Plaintiff. If The Money Tree had obtained a collateral protection plan for Plaintiff for the full term of her loan, the claim would not have been denied.

29. As a result of The Money Tree's practice of charging and collecting premiums from customers for collateral protection plans that were to be for a certain period or "for the term of the loan," but instead obtaining collateral protection plans for a shorter period, Plaintiff and the Class members, in the aggregate, suffered substantial damages.

## V. CLASS ALLEGATIONS

30. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of an opt-out class defined as follows:

(a) All persons in the United States who obtained a loan from any of The Money Tree Defendants and who were charged premiums for collateral protection plans (the "Class").

(b) Excluded from the Class definition are:

    (i) All judicial officers in the United States and their families through the third degree of relationship, and the spouse of any such person;

    (ii) Defendants and any of their officers, directors, and employees, and any person or entities who has already settled or otherwise compromised similar claims against the Defendants;

    (iii) Anyone who files, before final judgment, any bankruptcy proceeding;

    (iv) Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

    (v) Any governmental entities;

    (vi) Any co-conspirators;

    (vii) Any individual or entity who has pending against the named Defendants on the date of the Court's final certification order any individual or putative class action wherein the recovery sought is

based in whole or in part on the type of claims and/or allegations asserted herein.

31. Defendants' business practices and violations of the law are uniform, and, on information and belief, Defendants have collected money for collateral protection plans from thousands of customers in the United States (including Plaintiff and the Class members) in violation of the common law and Defendants' agreements with their customers.

32. The claims of the representative Plaintiff are typical of the claims of the Class, as required by Fed. R. Civ. P. 23(a)(3), in that the representative Plaintiff is a person who, like all Class members, obtained loans from Defendants and were not provided with collateral protection plans for the appropriate term. Such representative Plaintiff, like all Class members, has been damaged by Defendants' misconduct.

33. The requirements of Rule 23(a), Fed. R. Civ. P., are satisfied because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of claims or defenses of the class, and (4) the Plaintiff will fairly and adequately protect the interests of the class and has hired counsel experienced in the prosecution of class actions.

34. The representative Plaintiff will fairly and adequately assert and protect the interests of the Class, in that:

(a) The representative Plaintiff has no conflicts of interest with absent Class members in the maintenance of this action, and pursues this action for benefit of the plaintiff Class. Plaintiff has no present relationship with any defendant, in either an official or unofficial capacity;

(b) The representative Plaintiff, taken in conjunction with counsel, has adequate financial and other resources to conduct this litigation in a manner assuring that the interests of the plaintiff Class will not be harmed. Class counsel have agreed and have the ability to advance costs of this litigation; and

(c) The representative Plaintiff has retained counsel who are experienced in class action litigation.

35. The requirements of Rule 23 (b) are satisfied in that (1) the prosecution of separate actions by or against individual members of the Class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class, or (b) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) the party opposing the Class has acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

36. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. These common questions include, but are not limited to, the following:

    a. Whether Defendants' system for obtaining collateral protection plans for customers is flawed or inaccurate;

    b. Whether Defendants' system for obtaining collateral protection plans for customers results in a breach of agreements with the Class members;

    c. Whether Defendants violated the common law by improperly obtaining collateral protection plans;

    d. How frequently and persistently Defendants failed to comply with agreement provisions;

    e. Whether, and the extent that, Defendants were unjustly enriched by their practices relating to collateral protection plans for the loans offered;

    f. The nature and extent of Defendants' noncompliance;

    g. Whether, and to what extent, Defendants' noncompliant acts were intentional or in bad faith;

    h.    The amount of damages owing to the Class and other relief;

    i.    Whether the Class members are entitled to recover prejudgment interest; and

    j.    Whether, and to what extent, injunctive relief is available to the Class.

37. The common issues represent the most significant issues in the Class and can be resolved for all members of the Class in one action.

38. A class action will provide a fair and efficient method of adjudicating this controversy, in that:

    a.    Common questions of law and fact predominate over any questions affecting only individual Class members. The common issues are the most significant issues in the case, and can be resolved for all members of the Class in one action;

    b.    Neither the size of the Class nor any other factor makes it likely that difficulties will be encountered in the management of this action as a class action;

    c.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would confront Defendants with incompatible standards of conduct;

  d. The prosecution of separate actions by individual Class members would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

  e. The prosecution of separate actions by individual Class members, or the individual joinder of all Class members in this action, would create a massive and unnecessary burden on the resources of the courts; and

  f. Because of the disparity of resources available to the Defendants versus those available to individual Class members, prosecution of separate actions would work a financial hardship on many Class members.

## COUNT I (BREACH OF CONTRACT)

39. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

40. Plaintiff and all putative Class members entered into agreements with The Money Tree Defendants whereby they agreed to provide collateral protection plans for a certain term, usually the term of the loan, in return for payment.

41. Plaintiff and the putative Class members were obligated to and paid the premium for the collateral protection plan. At the same time, The Money Tree was obligated to

obtain collateral protection plans for a certain term and to deal with Plaintiff and the Class members fairly and in good faith.

42.     The Money Tree failed to procure collateral protection plans for Plaintiff and the putative Class members for the appropriate term.  Instead, The Money Tree provided collateral protection plans for a shorter period.

43.     The Money Tree breached its obligations to Plaintiff and the Class and did not deal with the Plaintiff and the Class fairly and in good faith.

44.     As a result, the Plaintiff and the Class have been damaged as a proximate result of The Money Tree's breaches.

## COUNT II (UNJUST ENRICHMENT)

45.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

46.     The Money Tree received benefits from Plaintiff and the Class members in the form of premium payments for collateral protection plans that covered a certain term, usually the term of the loans of Plaintiff and the Class members.

47.     The Money Tree did not provide and/or did not pay for collateral protection plans that covered the appropriate term.

48.     The Money Tree received money for such collateral protection plans under such circumstances that in equity and good conscience it ought not to retain.

49.     As a result, The Money Tree was enriched at the expense of Plaintiff and the Class members, and it is unjust and inequitable for The Money Tree to retain the benefits.

### COUNT III (INJUNCTIVE AND DECLARATORY RELIEF)

50.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

51.     As set forth above, through the improper practices described above, The Money Tree Defendants have intentionally and systematically charged improper amounts and/or retained improper premiums for collateral protection plans obtained by The Money Tree Defendants.

52.     The Money Tree Defendants' practices described herein are unlawful and against public policy and, therefore, The Money Tree Defendants should be prohibited and enjoined from charging for collateral protection plans in derogation of its obligations and its agreements with its customers.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays as follows:

    A.    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class, and designating Plaintiffs' counsel as counsel for the Class;

    B.    For a declaration that Defendants are alter egos of each other, are agents – either ostensible, apparent or other, and/or are joint venturers;

C. For judgment against Defendants on the legal and equitable claims together with an award of all damages, refunds and/or restitution as is available under law;

D. Because Defendants acted in bad faith, an award of attorneys' fees and expenses of litigation;

E. Preliminary and permanent injunctive relief against Defendants; and

F. Granting any such other and further legal or equitable relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

This 10th day of August, 2010.

      /s/ Jeffrey P. Leonard_____
W. Lewis Garrison
Georgia Bar No. 286815
lewis@hgdlawfirm.com
Jeffrey P. Leonard
Georgia Bar. No. 446657
jleonard@hgdlawfirm.com

HENINGER GARRISON & DAVIS, LLC
2224 1ST Avenue North
Post Office Box 11310 (35202)
Birmingham, Alabama 35203
(205) 326-3336
(205) 326-3332 (facsimile)